# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

CANDACE WARD, on behalf of
K.D.J, a minor                                                                                PLAINTIFF

V.                          NO. 4:16CV00903 BSM-JTR

NANCY A. BERRYHILL,[1]
**Acting Commissioner,**
**Social Security Administration**                                                    DEFENDANT

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Brian S. Miller. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objections; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

## I.  Introduction:

Plaintiff, Candace Ward, applied for Supplemental Security Income on behalf of her minor child, K.D.J. ("KDJ"), alleging a disability onset date of November 1,

---

[1] Berryhill is now the Acting Commissioner of Social Security and is automatically substituted as Defendant pursuant to Fed. R. Civ. P. 25(d).

2012. (Tr. at 8). After conducting a hearing, the Administrative Law Judge ("ALJ") denied Ward's application. (Tr. at 19). The Appeals Council denied her request for review. (Tr. at 1). Thus, the ALJ's decision now stands as the final decision of the Commissioner. Ward has requested judicial review.

For the reasons stated below, the Commissioner's decision should be affirmed.

## II. **The Commissioner's Decision:**

In minor child disability cases, an ALJ must follow a Three-Step sequential evaluation. Under this framework, the ALJ is required to first determine if the Plaintiff is engaging in substantial gainful activity. 20 C.F.R. § 416.924. Next, the ALJ must decide if the impairment, or combination of impairments, is severe. *Id*. Finally, the ALJ must determine if the Plaintiff has an impairment that meets, medically equals, or functionally equals a listed impairment. *Id*. A minor has met a listing if his impairment or combination of impairments results in a "marked" limitation in two domains of functioning, or an "extreme" limitation in one domain. 20 C.F.R. § 416.926. The six domains of functioning are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. *Id.*

At Step One, the ALJ found that KDJ had not engaged in substantial gainful

activity since the application date of December 11, 2013. (Tr. at 11). Next, the ALJ found that KDJ has the following severe impairments: oppositional defiant disorder ("ODD") and attention deficit hyperactivity disorder ("ADHD"). *Id.* At Step Three, the ALJ concluded that KDJ was not disabled because he did not have a severe impairment that met or equaled a listing (he did not have two marked limitations or one extreme limitation in the six functional domains). *Id.* The ALJ found: (1) no limitation in acquiring or using information, moving about and manipulating objects, and health and physical well-being; and (2) less than marked limitations in attending and completing tasks, interacting and relating with others, and caring for oneself. (Tr. at 13-19).

### III. <u>Discussion</u>:

    A.   Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the

> existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477.

### B. Ward's Arguments on Appeal

Ward appears *pro se* and her appeal brief does not specifically address any deficiencies in the ALJ's decision. The Court construes her argument as one alleging that the ALJ erred in finding KDJ did not meet a listing.

KDJ was born on October 15, 2007. (Tr. at 11). He was in pre-school at the time the application was filed, and he was a school-aged child at the time of the hearing. *Id.* KDJ exhibited symptoms of ADHD and ODD as early as five years old. (Tr. at 47). School records and records from Living Hope Southeast, LLC, ("Living Hope"), a rehabilitative outpatient therapy provider, indicate some mild to moderate behavioral impairments. (Tr. at 174-316). On October 30, 2013, Ward reported to

4

Christopher LaShon, LCSW at Living Hope, that KDJ had daily anxiety and attachment problems, accompanied by lying, impulsive, and oppositional behaviors. (Tr. at 182-83). Ward told Mr. LaShon that KDJ took no medications for his problems and had not been referred to a PCP to "assess issues raised in the behavioral screening." (Tr. at 189). Mr. LaShon found KDJ to be alert, with strong intellectual ability and supportive family and friends. (Tr. at 191). On November 13, 2013, Mr. LaShon noted that KDJ was fairly insightful with average intelligence, and he recommended medication management. *Id*.

On November 18, 2013, Dr. Thanh Nguyen, M.D., diagnosed ODD and ADHD. (Tr. at 196-97). However, he found normal affect and mood, normal speech, intact memory, coherent thought process, and normal thought content. (Tr. at 196). Over the course of numerous group therapy sessions at Living Hope in 2013 and 2014, KDJ exhibited both progress and regression, but showed great participation in group activity and appropriate affect and cognition. (Tr. at 210-317). KDJ showed a positive response to medication and a positive response to redirection. (Tr. at 216, 236, 304). At times, he was angry and upset, but KDJ understood his emotions and tried to control them. (Tr. at 263).

At numerous visits to Living Hope for outpatient therapy, from February 2014 to May 2014, mental health providers noted that KDJ was not consistently taking his

ADHD medication. (Tr. at 339-473). A failure to follow a recommended course of treatment weighs against a claimant's credibility. *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005). In addition, "[a] parent's failure to consistently administer effective medication as prescribed without good reason can be a proper ground for denying benefits." *Blake v. Barnhart*, 28 Fed. Appx. 597, 599 (8th Cir. 2002).

On multiple occasions, Ward said that KDJ responded very well to medication: "Melatonin calms him down and [helps him sleep]" (Tr. at 31); and "Medication works great. I can see a major difference when he is on his medication. He has more patience with people and completing tasks.") (Tr. at 132). Ms. Rhoads, KDJ's Kindergarten teacher, noted some behavior problems at the beginning of the school year but reported, on January 17, 2014, that "once on medication, KDJ was able to control his actions and focus on his work. He excelled in all areas in school and constantly received compliments from staff about his new behavior." (Tr. at 172). Ms. Rhoads wrote on a teacher questionnaire on February 10, 2014 that KDJ was a very smart student and his anger and discipline issues went down significantly after he was placed on medicine. (Tr. at 323). Impairments that are controllable or amenable to treatment do not support a finding of total disability. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000).

According to Living Hope records, during the same period that KDJ was not

consistently taking his medications, Ms. Rhoads wrote up several behavior documents based on KDJ acting out in class, not following directions, and cussing. (Tr. at 329-330). While KDJ made A, B, and C grades, did not take special education classes, and completed all assignments when focused, (Tr. at 13-14, 27, 322, 129), his teachers found slight or moderate problems in school. (Tr. at 322, 323). Ms. Rhoads found obvious problems in changing from one activity to another without being disruptive and working without distracting others. *Id.* But again, she pointed out that KDJ experienced significant improvement with medication. *Id.*

In May 2015, KDJ was suspended from school for two days for writing profanity on school walls (Tr. at 484), and during that same time he was diagnosed with intermittent explosive disorder at Dayspring Behavioral Health ("Dayspring"). (Tr. at 486). Ward reported to the LCSW at Dayspring that KDJ was a smart, good kid. (Tr. at 487). He loved playing basketball. *Id.* Medication was recommended, with monitoring and education on compliance. (Tr. at 488).

Two state-agency medical consultants reviewed the medical records and found KDJ did not meet a listing. With respect to the six domains indicated in the listings, Dr. Stephen Whaley, M.D., found no limitation in acquiring and using information, moving about and manipulating objects, or health and physical well-being. (Tr. at 42). He found less than marked limitations in attending and completing

tasks, interacting and relating with others, and caring for oneself. *Id*. Dr. H. Frazier Kennedy, M.D., confirmed Dr. Whaley's listings assessment.[2] (Tr. at 52).

KDJ appears to be a smart and motivated child who is impaired by multiple behavior diagnoses. However, the records reflect that, with medication, KDJ's problems resolve almost entirely. Ward confirms that medication brings forth a pleasant and cooperative personality in KDJ. Medical records and teachers' reports confirm this. The school suspension and generally disruptive behavior arose when KDJ was not medication compliant. Failure to follow prescribed treatment may be used to discredit claims of disability. *Brown v. Heckler*, 767 F.2d 451, 452 (8th Cir. 1985)). Based on the totality of the evidence, the ALJ did not err in his Step Three listings discussion and decision.

**IV.     Conclusion:**

There is substantial evidence to support the Commissioner's decision that KDJ was not disabled. The ALJ did not err in his Step Three conclusion.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision be AFFIRMED and that the case be DISMISSED, with prejudice.

---

[2] The ALJ adopted the findings of the two medical consultants. (Tr. at 13-19).

DATED this 26th day of September, 2017.

_____
UNITED STATES MAGISTRATE JUDGE